475 A.2d 1303

COMMONWEALTH of Pennsylvania, Appellee,

v.

Curtis L. ANTHONY, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1984.

Decided April 24, 1984.

554

Brian J. O'Neill, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Gaele McLaughlin Barthold, Philadelphia, for appellee.

## OPINION

McDERMOTT, Justice.

On September 4, 1975, appellant, Curtis L. Anthony, was arrested on charges of felony-murder, robbery, criminal conspiracy, and possession of an instrument of crime, for his participation in the hold-up of a clothing store, which resulted in the shooting death of the proprietor. The slaying had been witnessed by the victim's partner. Shortly after his arrest, appellant gave written and taped-recorded statements admitting complicity and implicating his confederate.

Prior to trial, appellant negotiated a plea bargain with the prosecutor. In return for a plea to charges of murder and robbery, the Commonwealth certified that the murder rose no higher than third degree and nol prossed all remaining charges. Before accepting appellant's plea, the trial judge engaged in an extensive guilty plea colloquy with appellant,

probing his knowledge and understanding of his rights and his willingness to forego them. After his plea appellant was sentenced to concurrent terms of imprisonment of 10 to 20 years for third degree murder, and 2½ to 5 years for robbery. No petition to withdraw the plea was filed nor direct appeal ever perfected; rather, appellant sought relief under the Post Conviction Hearing Act (hereinafter "PCHA").[1] Following a hearing on the petition, appellant's requested relief was denied. The order of the PCHA Court was affirmed on appeal by the Superior Court (Opinion, McEwen, J. joined by Cirillo and Hester, JJ.). *Commonwealth v. Anthony,* 307 Pa.Super. 312, 453 A.2d 600 (1982). This appeal followed.

■ Prior to reviewing the merits of appellant's claim we note that the PCHA Court held, and the Commonwealth has here argued, that the failure of appellant to effect a direct appeal constituted a waiver of the issues raised herein. However, appellant's complaints were raised in the context of an ineffective assistance of counsel claim: an "extraordinary circumstance" under 42 Pa.C.S.A. § 9544(b), sufficient to permit review of the alleged errors. *Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222 (1982). As a result, the Superior Court elected to address appellant's substantive claims, as do we, in light of the standard that counsel will not be held to have been ineffective for failing to raise a meritless claim. *See Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

Appellant urges that because he was not explicitly informed during his guilty plea colloquy that a jury verdict must be unanimous, it was defective, and consequently, he now is entitled to a withdrawal of his negotiated plea and a trial. *See Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973). It is conceded that the colloquy was sufficient in all other aspects.

1. Act of January 25, 1966, P.L. (1965) 1580, No. 554, 19 P.S. § 1180–1, *et seq.* Repealed by Act of May 13, 1982, P.L. 417, No. 122, § 2, *as amended,* 42 Pa.C.S.A. § 9541, *et seq.*

In evaluating appellant's claim, we find guidance in the most recent interpretation of *Williams, supra,* by this Court in *Commonwealth v. Carson,* 503 Pa. 369, 469 A.2d 599 (1983), in which Mr. Justice Zappala noted:

It must be recognized that *Williams* did not establish a prophylactic rule requiring a new trial for failure of the record to indicate the defendant's knowledge of each and every element of the jury trial right which he was waiving. The focus in *Williams* was, and it remains, whether the waiver was knowing and intelligent, not whether certain talismanic questions were asked and answered.

*Id.,* 503 Pa. at 372, 469 A.2d at 600.

■ Knowledge by the defendant of the nature of the consequences of a plea of guilty may be found from the totality of the circumstances and is not limited to direct instruction by the court. *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982). As Mr. Justice Flaherty wrote in *Shaffer:*

The true constitutional imperative is that the defendant receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." (Citation omitted.)

*Id.,* 498 Pa. at 350, 446 A.2d at 595. In that case, the elements of the offenses charged were spelled out in the Commonwealth's case, and the defendant elected to plead guilty. We held that no further advices were required.

Furthermore, we cited with approval the reasoning articulated on this issue by the United States Supreme Court in *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976):

It may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. *Id.* at 647, 96 S.Ct. at 2258, 49 L.Ed.2d at 116.

Mr. Justice Flaherty continued this analysis by stating:

So also may we presume that, absent an assertion that appellant did not understand the nature of the crimes,

counsel explained the nature of the offense in sufficient detail to give him notice of that which he admits by entering a plea of guilty. The Court in *Henderson* indicated that the validity of a plea may be determined from the "totality of the circumstances" attendant upon the entry of the plea. This approach was discussed by th[at] Court as follows:

> [The State] contends that ... [i]nstead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, ... the court should *examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused.* We do not disagree with the thrust of [the State's] argument. . . .

*Id.* at 644, 96 S.Ct. at 2257, 49 L.Ed.2d at 114 (emphasis supplied).

*Shaffer, supra,* 498 Pa. at 350, 446 A.2d at 595.

Similar analyses have been employed by this Court in *Commonwealth v. Smith,* 498 Pa. 661, 450 A.2d 973 (1982) and *Commonwealth v. Gardner,* 499 Pa. 263, 452 A.2d 1346 (1982). In *Smith, supra,* the record colloquy omitted an explanation of the jury unanimity and defendant participation in the jury selection requirements. Notwithstanding this omission, this Court found that a written form signed by the defendant included the neglected requirements and cured the defective colloquy. Likewise, in *Gardner, supra,* a defective guilty plea colloquy was not considered fatal when it was supplemented by testimony of defense counsel that he had informed his client of his jury trial rights.[2]

---

**2.** We note that the Superior Court has followed our lead in resolving technically defective guilty plea colloquies, refusing to allow the withdrawal of said pleas. *See Commonwealth v. Campbell,* 309 Pa.Super. 214, 455 A.2d 126 (1983) (although colloquy failed to inform appellant of elements of crimes charged, and the right to select jurors from amongst his peers, plea was voluntary and intelligent under the totality of the circumstances). *See also Commonwealth v. Owens,* 321 Pa.Super. 122, 467 A.2d 1159 (1983) (omission in colloquy to include Commonwealth's burden of proof and defendant's right to remain

558

■■■ A guilty plea is an acknowledgement by a defendant that he participated in the commission of certain acts with a criminal intent. He acknowledges the existence of the facts and the intent. The facts that he acknowledges may or may not be within the powers of the Commonwealth to prove. However, the plea of guilt admits that the facts and intent occurred, and is a confession not only of what the Commonwealth might prove, but also as to what the defendant knows to have happened.

A defendant may plead guilty for any reason: to shield others, avoid further exposure, to diminish the penalty, to be done with the matter, or any secret reason that appeals to his needs. What is generally and most objectively accepted is that a plea is offered to relieve conscience, to set the record straight and, as earnest of error and repentance, to accept the penalty.

■■■ Pa.R.Crim.P. 319 requires that a guilty plea be offered in open court, and sets a procedure to determine voluntariness and whether the defendant is acting knowingly and intelligently.[3] As noted in the comment to Rule 319, the minimum to be determined is:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

silent not fatal under totality of circumstances); *Commonwealth v. Bruno*, 310 Pa.Super. 564, 456 A.2d 1080 (1983) (although colloquy did not fully inform appellant of all elements of crimes charged and range of sentence, plea voluntary because appellant entered it to receive benefit of favorable plea bargain); *Commonwealth v. Warren*, 307 Pa.Super. 221, 453 A.2d 5 (1982) (plea colloquy not defective for failure to include statement about right to trial without jury); *Commonwealth v. Siebert*, 305 Pa.Super. 321, 451 A.2d 552 (1982) (omission of phrase presumption of innocence does not render guilty plea invalid); *Commonwealth v. Tanur*, 297 Pa.Super. 40, 443 A.2d 288 (1981) (although plea colloquy neglected to inform appellant of jury trial right, plea voluntary because appellant entered it to obtain favorable bargain).

3. In *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971) a colloquy embracing these concepts was commended. No larger inquiry was necessary.

(3) Does the defendant understand that he has the right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Under this rule, beside determining whether the plea is voluntary, knowledgeable and intelligent, the court must also determine whether there is a factual basis for the plea: i.e., whether the facts acknowledged by the defendant constitute a prohibited offense. This salutary requirement is to prevent a plea where in fact the legal requirements have not been met; and, to name and define the offense, supported by the acts, so the defendant will know the legal nature of the guilt to which he wishes to plead. No more than these inquiries are required.

A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. If a defendant voluntarily, knowingly, and intelligently wishes to acknowledge facts that in themselves constitute an offense, that acknowledgement is independent of the procedures of proving or refuting them. How they would be proved, what burdens accompany their proof, what privileges exist to avoid their proof, what safeguards exist to determine their accuracy, and under what rules they would be determined, by whom and how, are irrelevant. The defendant is before the court to acknowledge facts that he is instructed constitute a crime. He is not there to gauge the likelihood of their proof, nor to weigh them in the light of the available procedures for their proof. He is there to voluntarily say what he knows occurred, whether the Commonwealth would prove them or not, and that he will accept their legal meaning and their legal consequence. The requirements of Rule 319 do not mandate any specific language. As we held in *Carson, supra,* all that is required is

that the defendant understand, have knowledge of the nature of the offense in as plain a fashion as possible, and the court be satisfied that the defendant understands and is willing to act on his understanding.[4]

■ The record here unquestionably demonstrates that appellant voluntarily pled guilty because of overwhelming evidence and a very favorable plea arrangement. The record also adequately reveals that appellant understood the nature of the charges against him, the acts which comprised the offenses with which he was charged, and the permissible range of sentences which might be imposed. He affirmatively stated that he understood that he possessed a right to a trial by jury from twelve of his peers, and that should he proceed with a jury trial, he would be presumed innocent until every single element of the crimes he was charged with were proven beyond a reasonable doubt by the Commonwealth. (N.T. at 13, 22.) Moreover, the trial judge specifically cautioned appellant that he would not accept his plea unless he was in fact guilty of the crimes charged. After a satisfactory answer, he proceeded to question appellant about the voluntariness of his plea. Appellant's response for entering his plea was "because it is a life sentence that I have seen so far." (N.T. at 18.)

Appellant now seeks to withdraw his negotiated guilty plea because he was not advised, during an extensive colloquy, that a jury verdict must be unanimous. It is clear from this record that appellant's plea was knowing and intelligent. We reject appellant's argument that a failure to recite certain magic words or phrases constitutes per se grounds for reversal. Since such advices were not re-

---

**4.** Sometimes, adding the necessities for explanation of waiver of jury trial to the guilty plea colloquy, trial judges have gone to unnecessary lengths explaining the distinction between jury trial and waiver, including the requirement of unanimity, the right to participate in selection and even the provenance of juries. None of which is required. Indeed, the fear that some word or concept will be left unsaid, something misstated, is so pervasive that some judges prefer a trial to a plea. We shall pass without comment for the nonce, the rich vein of appeal that could be opened by a defendant or counsel's deliberate silence when ritual words fail.

quired, his contention is without merit, and we perceive no basis upon which to find appellant's counsel ineffective.

■ Appellant also complains that the trial court committed an abuse of discretion in denying him permission to withdraw his guilty plea before sentencing.[5] The standard that must be employed when reviewing this claim is whether a defendant has demonstrated a "fair and just reason" for the withdrawal request. *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (1973). Even if a viable reason is advanced for withdrawal, it is allowed only if the Commonwealth has not been substantially prejudiced by reliance on the plea. *Commonwealth v. Forbes, supra.*[6]

■ At appellant's initial sentencing hearing he orally inquired whether he could withdraw his guilty plea. At that point the trial court conducted its own inquiry to clarify his reasons for considering withdrawal. Appellant's sole response was that he "didn't fully understand it" when he entered it. He did not elaborate, however, on any particular aspect of the plea or bargain he failed to understand. The trial court then reminded appellant of his previous on-the-record unequivocal admissions of guilt and testimonial understanding of his guilty pleas, and the contradictory position that his present statement would place him. After having been given an opportunity to renounce his previous statements, the appellant declined to do so and reaffirmed his earlier statements. The appellant then changed strategy by asking the court for probation in lieu of imprisonment. The court unsatisfied with the progression of the dialogue granted a short recess to allow the appellant time to confer with family members and counsel.

5. Appellant's sentencing took place five months after he entered his plea of guilty.

6. Because appellant has failed to satisfy the "fair and just" standard, there is no need to reach the issue of whether the Commonwealth has been prejudiced in its reliance on the plea. However, we might note that over eight years have elapsed since appellant was first adjudged guilty, and that the Commonwealth does have an interest in the finality of the judgment.

After a short recess and in appellant's presence, his counsel addressed the court on his behalf and said:

[Defense Counsel]: I think Mr. Anthony fully—I am satisfied he fully comprehended and understood everything that took place at the time of his plea. I think Mr. Anthony understands everything that has taken place now. He is a youngster who is just terrified with the prospect of being in prison. (N.T. at 7–8.)

Actual sentencing, however, was deferred until the court could ascertain the imprisonment term that was imposed on appellant's accomplice. At no time during the months of postponement, did appellant assert his innocence or renew his uncertainty about the plea. Nor was any petition to withdraw his plea ever filed. At the hearing on July 7, 1976 and prior to the imposition of sentence rather than protesting his innocence, appellant reaffirmed both his guilt and his understanding of his plea. He then expressed specifics about the extent of his involvement in the incident. Furthermore, at no time did appellant challenge or rebut his counsel's earlier representation that he did in fact fully understand the terms and conditions of his plea.

Appellant's admissions of guilt were substantiated by evidence read into the record revealing written and tape recorded statements given by appellant, the presence of an eye-witness, the victim's partner, at the time of the killing and the presence of appellant's fingerprints at the place of the robbery.

Since appellant has failed to meet the "fair and just" standard of withdrawal of a plea prior to sentence, we find no abuse of discretion in the lower court's refusal to permit him to withdraw it.

Judgment of sentence affirmed.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a concurring opinion in which LARSEN, J., joins.

NIX, Chief Justice, concurring.

I concur in the result because this claim was clearly waived under section 4(b), 42 Pa.C.S. § 9544(b). The entry of this plea was part of a plea negotiation that provided appellant with a very favorable result under the circumstances. The decision not to appeal from the judgment of sentence within the prescribed period, Pa.R.A.P. § 903, was a deliberate and knowing one. This was the lower court's finding and it is supported by the record.

ZAPPALA, Justice, concurring.

I concur in the result reached by the Majority. I write separately to emphasize the procedural posture of this case which to my mind has a substantial bearing on its proper disposition.

This case comes to us on appeal from an adverse determination of a petition under the Post-Conviction Hearing Act, 42 Pa.C.S. § 9541, *et seq.* To be eligible for PCHA relief a petitioner must prove that his conviction or sentence resulted from one or more of the reasons enumerated in the Act, and that the error has not been finally litigated or waived. 42 Pa.C.S. § 9543(3), (4). Among the reasons enumerated as supporting relief are "[t]he denial of his constitutional right to representation by competent counsel," and "[a] plea of guilty unlawfully induced." 42 Pa.C.S. § 9543(3)(vi), (vii). For purposes of the Act, an issue is waived if the "petitioner knowingly and understandingly failed to raise it ... on appeal" and "is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue." 42 Pa.C.S. § 9544(b). Furthermore, there exists a rebuttable presumption for purposes of the Act that failure to appeal is knowing and understanding. 42 Pa.C.S. § 9544(c).

It is undisputed that in the present case no direct appeal was taken. For most purposes, then, the issue of the adequacy of the guilty plea colloquy is waived. In order to meet the requirements for PCHA relief, the Appellant must prove extraordinary circumstances which would justify his

failure to previously raise the issue. To this end he challenged the effectiveness of his trial counsel. At the PCHA hearing, the Appellant testified that he spoke to his counsel about appealing. Significantly, he testified that *he never directed counsel to file an appeal.* Moreover, the Appellant did not offer trial counsel as a witness. There was thus no evidence at the hearing from which it could be concluded that counsel's decision not to appeal lacked a reasonable basis designed to effectuate his client's best interests. Indeed, the reason for not appealing is clear from the face of the record. The evidence overwhelmingly proved guilt of second degree murder, punishable by life imprisonment. The plea agreement arranged in this case eliminated some of the charges against the Appellant and, most importantly, gave certification that the murder charge rose no higher than third degree, punishable by a maximum of 10 to 20 years imprisonment. Having obtained such a favorable result for his client, counsel reasonably would not attempt to overturn it and subject the Appellant to trial and almost certain life imprisonment for second degree murder.

I am also convinced that there is substantial evidence on the record—from the guilty plea colloquy, from the sentencing hearing, and from the PCHA hearing—to support the finding of the lower courts that, notwithstanding his later statement to the contrary, Appellant fully understood his rights at the time of the plea, and knowingly and voluntarily waived them. *See Commonwealth v. Carson,* 503 Pa. 369, 469 A.2d 599 (1983). Counsel could not be held ineffective for failing to raise a meritless claim.

There being no basis upon which the lower court could find an "extraordinary circumstance" justifying failure to appeal the issue of the allegedly defective colloquy, the court properly determined that the issue was waived and could not be the basis for relief under the Post-Conviction Hearing Act.

LARSEN, J., joins in this concurring opinion.